TONY G. MARTIN, Plaintiff and Respondent, v. CHARLES GLEN SMITH et al., Defendants and Respondents; RAYMOND RILEY RICHARDSON et al., Appellants.

Appelbaum & Mitchell and John Jewett Earle for Appellants.

Sinclair M. Dobbins, Walter W. Weir, Jr., Charles V. Barfield and Burt D. Goodman for Respondents.

ADAMS, P. J.—Plaintiff brought this action to recover damages for injuries which he sustained in a collision between an automobile belonging to Walter P. Jaarsma and driven by Charles Glen Smith, and a truck belonging to Manuel Souza, driven by Raymond Riley Richardson. Martin was a passenger in the Jaarsma car in which Jaarsma and another person were also riding. He sued Smith and Jaarsma, as well as Souza and Richardson. A jury returned a verdict for plaintiff against Jaarsma and Smith, but denied any recovery against the owner and driver of the truck. Plaintiff Martin and defendants Jaarsma and Smith all moved for new trials, which were granted. This appeal is taken by Souza and Richardson, it being their contention that no negligence on their part was shown, and that the verdict of the jury in their favor should not have been disturbed.

The facts are conceded to be substantially as follows: About noon on April 2, 1948, Richardson was driving defendant Souza's yellow milk truck and trailer in a westerly direction on a two-lane highway, approximately 7 miles west of Rio Vista, Solano County. The road traversed a hilly region which consisted of a succession of rolling elevations and depressions. Rain had fallen during the morning, the highway was damp, and the adjacent ground was muddy and soft. As Richardson surmounted the crest of a slight hill he heard a noise like an explosion, apparently emanating from under his truck. As there was only a two-foot shoulder which dropped off into a ditch 4 or 5 feet deep he did not turn off the roadway at that point to check the vehicle, but proceeded slowly toward a wider area near the foot of the slope where an intersection appeared to afford an opportunity to stop outside of the traffic lane. However, before he reached it the brakes on the trailer locked and the entire equipment became disabled and immovable in the right-hand traffic lane at a distance below the crest of the hill variously stated to be 150 to 300 feet. Being unable to move the truck he set out three warning devices which consisted of metal frames 4 inches wide and 6 to 8 inches high, with two 3 or 4-inch reflectors on each side. One was placed at the crest of the hill, another about 60 feet behind the stalled vehicle, and the third about 25 feet in front of it, all in the right-hand driving lane near the white line. He also blocked the wheels of the truck and trailer. He then flagged a passing car and returned to Rio Vista for assistance, leaving the truck unattended for about an hour.

The car in which plaintiff was riding was also proceeding west toward Fairfield, along the same highway. As it ascended the east slope of the hill on the other side of which the truck was standing, plaintiff Martin was reading a book, there apparently being enough light for this purpose despite the slight rain. Martin testified that the Jaarsma car was traveling about 50 miles per hour, while Smith, the driver, estimated his speed at 40 to 45 miles per hour. The three occupants of the car testified that they saw the truck as they reached the crest of the hill, though Smith, the driver, said that when he came over the crest of the hill he did not realize that the truck was stopped; also that he did not notice an eastbound car in the other lane and swung out to his left, intending to pass the truck; that he then observed the oncoming car, swerved back to his own side of the road and slammed on his brakes about 50 feet from the truck; that after the oncoming car had passed, he again tried to pass to the left of the stalled truck and trailer and as he pulled to his left the rear end of his car "slipped around" and hit the stalled equipment, throwing Martin to the ground and causing him severe injury.

Appellants assert that there was error in granting the new trial as to them; that they made a motion for a nonsuit at the conclusion of plaintiff's case during which the facts set forth were educed; that the nonsuit was denied by the trial court, with the comment that Richardson should not have left his vehicle unattended but should have taken a position near the brow of the hill to warn oncoming traffic; and that it was for the jury to determine whether Richardson was or was not negligent. Yet even after the jury had absolved appellants from liability, the trial court nevertheless set aside the decision of that body which he himself had said was the proper tribunal to resolve the issue.

Appellants contend that there was no negligence on Richardson's part; that he did all that was required of him under the circumstances and that it was not negligence for him to fail to remain near the place of the accident and warn oncoming traffic; that in fact he exercised greater precaution than required by law when he set out the reflectors, since the Vehicle Code contains no such requirement for warning of a disabled car during daylight hours. They also state that the disabled truck was not the proximate cause of the accident, but that the negligence of Smith in driving too fast and in failing to observe the warning reflectors and the obvious truck stalled

in the middle of the road was the proximate cause; and they also assert that it cannot be said that the failure of Richardson to remain in person to warn oncoming vehicles was the proximate cause of the accident.

■ The rule is well established that an appellate court will not reverse an order of a trial court granting or refusing a new trial unless it can be said as matter of law that there was no substantial evidence to support a judgment for the moving party, or that there was a clear or manifest abuse of discretion on the part of the trial court in granting the new trial. This subject has recently been dealt with extensively in two opinions by this court, to wit: *Yost* v. *Johnson*, 91 Cal.App.2d 849 [206 P.2d 13], and *Rembold* v. *Goodwin*, 93 Cal.App.2d 605 [209 P.2d 402]. ■ However, if and when it appears that there is no substantial evidence to support a judgment in favor of a party whose motion for new trial has been granted, an appellate court may and should reverse the order of the trial court granting a new trial. The rule as stated in *Mazzotta* v. *Los Angeles Ry. Corp.*, 25 Cal.2d 165, 168 [153 P.2d 338], is that if the evidence as a whole would be insufficient as a matter of law to support a verdict in favor of the moving party, the order appealed from should be reversed. Also see *Roscoe Moss Co.* v. *Jenkins*, 55 Cal.App. 2d 369, 373 [130 P.2d 477]. In *Seth* v. *Lew Hing*, 125 Cal. App. 729, 732 [14 P.2d 537, 15 P.2d 190], in which an order granting a new trial was reversed and a hearing in the Supreme Court denied, the rule was thus stated: "Preliminarily we should consider the function of this court on an appeal from an order granting a new trial. On this point the authorities are in accord with the statement found in *Moss* v. *Stubbs*, 111 Cal.App. 359, 363 [295 P. 572, 296 P. 86], that 'It is equally well settled that where there is no substantial conflict in the testimony on material issues, and the evidence as a whole would be insufficient as a matter of law to support a verdict in favor of the moving party, an order granting a new trial cannot be sustained.' [Numerous cases cited.]" In *Henderson* v. *Braden*, 35 Cal.App.2d 88, 91 [94 P.2d 625], a verdict was returned for defendant in a collision case, the court granted a new trial, and this court reversed the order, saying: "It is well settled that where the evidence as a whole would be insufficient as a matter of law to support a verdict in favor of the moving party, an order granting a motion for new trial cannot be sustained. (*Moss* v. *Stubbs*, 111 Cal.

App. 359-363 [295 P. 572, 296 P. 86], where numerous cases are cited.)'' In *De la Falaise* v. *Gaumont-British P. Corp.*, 39 Cal.App.2d 461 [103 P.2d 447], an action for breach of contract in which the court granted a new trial, the order was reversed; and after restating the above rule many cases were cited in support thereof. In *Schlemmer* v. *Stokes*, 47 Cal.App. 2d 164 [117 P.2d 396], plaintiff, a minor, sued to recover damages for injuries resulting from a fall out of an apartment window. A jury returned a verdict for defendant and the court granted a new trial, which was reversed, repeating the above rule.

In the case before us we are satisfied that as matter of law there was no evidence which would justify or sustain a decision in favor of plaintiff as against these appealing defendants, and that in granting a new trial as to them the trial court abused its discretion. While section 582 of the Vehicle Code prohibits the stopping, parking or leaving standing of any vehicle upon any highway outside of a business or residential district, whether attended or unattended, when it is practicable to stop, park or so leave such vehicle off the paved or improved or main traveled portion of the highway, section 584 of said code provides that such restriction ''shall not apply to the driver of any vehicle which is disabled while on the paved or improved or main traveled portion of a highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving such disabled vehicle upon such part or portion of said highway.'' There is no requirement of law that one whose vehicle is disabled shall remain with said car and personally warn oncoming traffic. While section 590 of the Vehicle Code (which was added by Stats. 1935, ch. 508, p. 1579, and amended by Stats. 1937, ch. 282, § 8, p. 620) provides what shall be done when any commercial vehicle becomes disabled upon the highway *at night,* there is no similar provision regarding warning signals which the driver of a commercial vehicle is compelled to show when his vehicle becomes disabled upon the highway during the daytime, and nothing that requires him to remain with the vehicle to warn oncoming traffic.

In *James* v. *White Truck etc. Co.*, 1 Cal.App.2d 37 [36 P.2d 401], a case decided prior to the enactment of section 590 *regarding* warning signals at night, it was contended that the trial court erred in ordering judgment for defendants after a jury had returned a verdict against them in favor of plaintiffs. In that case a truck became disabled upon

the highway at night and the driver left the vehicle while he went to telephone for aid. It was contended by appellant that the driver should have backed his truck and trailer from the place where they came to a stop over to and near the curb before he left the vehicle on the highway, and also that he was negligent in failing to remain on guard at the rear of the truck to warn approaching motorists that the truck was disabled and was stationary. The evidence showed that the provisions of the Vehicle Act concerning lights, and particularly a red taillight, were fully complied with by the driver of the truck. Appellants suggested that a motorist observing a red light ahead would assume or believe that it was attached to a moving vehicle and that they were therefore entitled to some other warning of a stationary object; but the appellate court said: ''We cannot give assent to this contention, nor approval to the doctrine involved in the suggestion. Whether the red light is on a swift or slow-moving vehicle, or on a stationary obstruction, from the time it is first observed, it conveys the information of danger and the observer is bound to heed its warning.''

In *Lockie* v. *Pence*, 5 Cal.App.2d 172 [42 P.2d 340], also decided prior to the enactment of section 590 of the Vehicle Code, a truck became totally disabled upon the highway at night. Defendant left the truck in charge of an employee while he went to telephone for a mechanic. It was raining at the time, and after observing that the taillight on the truck was burning, the employee got into the cab of the truck. A car in which plaintiff was riding approached from the south and crashed into the rear end of the stalled truck. A jury returned a verdict in favor of plaintiff, but the trial court granted defendant's motion for a judgment notwithstanding the verdict, and such judgment was affirmed on appeal. Appellant contended that the taillight on the truck was not burning, but the appellate court held that the evidence was to the contrary and that there was no evidence in the record to establish, by inference or otherwise, any negligence on the part of defendant. A petition to have the cause heard in the Supreme Court was denied in that case.

*Chapin* v. *Stickel*, 173 Wn. 174 [22 P.2d 290], and *Currier* v. *Ingram*, 75 F.2d 783 [111 A.L.R. 1511], are in accord with the above cited decisions. Also see *Scoville* v. *Clear Lake Bakery*, 213 Iowa 534 [239 N.W. 110, 112], a daylight case, in which it was held that failure to have warning lights attached to, or an attendant with, a disabled truck did not show negli-

gence as to a traveler who observed the truck some distance therefrom. The appellate court said: "Nor does it appear that the 'dead' truck was the proximate cause of plaintiff's injury. Though the question of proximate cause, like that of negligence, is usually one for the jury, yet it is such only when the evidence warrants doubt thereon. In this case, the evidence introduced by the plaintiff himself discloses affirmatively that the proximate cause of plaintiff's injuries was other than the alleged act of the defendant." Another Iowa case is *Albrecht* v. *Waterloo Const. Co.*, 218 Iowa 1205 [257 N.W. 183]. There a motorist, at a distance of 250 feet, perceived the object on the highway, and at 150 feet recognized it as a truck on the pavement. The court said it was therefore clear that the absence of lights or other warning to advise plaintiff's driver of the presence of the truck was immaterial. (Citing *Scoville* v. *Clear Lake Bakery, supra.*)

In the later Iowa case of *Engle* v. *Nelson*, 220 Iowa 771 [263 N.W. 505, 509], the court approved the Scoville case and thus quoted from *Ryan* v. *Trenkle*, 203 Iowa 443 [212 N.W. 888, 889] : "A person who has knowledge of the presence of a train or auto which imparts to him the very thing that a signal was intended to impart cannot, under ordinary circumstances, predicate negligence on the failure to give a signal." Then quoting from the Scoville case, the court said: "The only function to be served by lights, or by an attendant, would be to warn travelers of the presence of the obstruction in the road. Such ground of negligence could not be available to a plaintiff, who saw the truck for hundreds of feet in his approach thereto, and had no need of further warning."

In *Farrar* v. *Farrar*, 41 Ga.App. 120 [152 S.E. 278], the court said that the driver of an auto is not required by statute, when stopping on the highway, to put out a guard to give notice of his presence to drivers of cars approaching from the rear. Also see *Hoffmann* v. *Krause*, 247 Wis. 565 [20 N.W.2d 546], *Boepple* v. *Mohalt*, 101 Mont. 417 [54 P.2d 857], and *Currier* v. *Ingram, supra*, at page 786, in which latter case the court specifically said that the lights on plaintiff's truck having complied with statute, there was no negligence on the part of plaintiff in stopping his truck where he did, and that the jury was not warranted in finding that due care also required a man to be stationed at the rear of the truck to warn oncoming traffic.

In the case before us we think it is clear that Richardson was not negligent in failing to remain with his truck for the

purpose of warning oncoming traffic. The yellow truck and trailer were in themselves ample warning to Smith, the driver of the automobile, and he admitted that he observed same in ample time to slow up or stop. Instead, he elected to pass the truck and trailer to the left, but, on discovering an oncoming vehicle in that lane, he turned back into his lane and after the oncoming vehicle had passed he again tried to pass the truck and trailer but the rear end of his car "slipped around" and hit the stalled truck and trailer. Furthermore, he failed to observe the warning reflector placed on the brow of the hill, which reflector was still there after the accident; and apparently he did not observe the one placed 60 feet behind the truck, though, according to plaintiff's testimony, he apparently ran over it in his course. Under the authority of the cases above cited there was no negligence on the part of Richardson in leaving his disabled truck upon the highway, since he was powerless to do otherwise; nor can it be said that his failure to remain with the truck to warn oncoming traffic was negligence. Certainly it was not negligence which was in any sense the proximate cause of the accident.

The order is reversed.

Van Dyke, J., and Deirup, J. pro tem., concurred.