[Civ. No. 5772. First Appellate District, Division Two.—November 9, 1928.]

THE DEMOCRAT–HERALD PUBLISHING COMPANY (a Corporation), Respondent, v. RAYMOND C. PETTIT et al., Defendants; J. De MENEZES & SON, etc., et al., Appellants.

A. Q. Lomba and G. E. Jackson for Appellants.

Herbert Choynski for Respondent.

KOFORD, P. J.,—Defendant Pettit was the sole proprietor or manager of the Pacific Printing Machinery Company engaged in the business of buying, repairing, reconditioning, and reselling new and second-hand printing machinery. Appellants purchased from said Pettit, May 29, 1925, at his place of business in San Francisco, a certain printing-press, paid for it and had it delivered and set up in their place of business in Oakland, on or before June 27, 1925. Thereafter in August, 1925, respondent commenced this action against appellants and defendants for the recovery of the said press, claiming that it had never parted with title to the same, but that the press had been delivered to Pettit upon a conditional sale agreement reserving title in respondent until full payment of the sale price, which had not been made. The complaint alleged ownership and right of possession and the answer of appellants contained only denials. Defendants Pettit and Pacific Printing Machinery Company were not served with summons and were not parties to the trial.

The transactions between respondent and Pettit accompanying and following the delivery of the printing-press to Pettit are outlined as follows: Pettit wired to respondent "an offer on the press on a 30 day basis," asking respondent to ship it if satisfactory. Respondent answered that it would accept his offer upon deposit of one hundred dollars and the signing of a contract. A contract was prepared by respondent and sent to Pettit for his signature about May 6, 1925. It provided for payment of the balance of the purchase price in thirty days and that the title should remain in respondent until paid. Pettit replied by sending one hundred dollars and a seven hundred dollar promissory note payable in thirty days and the agreement

signed with changes or a new agreement to some different effect but resembling the one received by him in form and color. The alteration or change in the contract made by Pettit was not noticed by respondent. It shipped the press directly to Pettit and forwarded a uniform straight bill of lading, dated May 15th, directly to Pettit, who received the bill of lading and the press about May 29th. This is the same date as the contract of sale from Pettit to appellants. On June 10th Pettit wired respondent "Will you supply bill of sale on Huber Press in return for post dated check payable July first, cannot finance sale to our customer otherwise." Respondent replied to this wire as follows: "If you will send certified check for seven hundred five dollars and forty four cents, principal and interest to July first, with check dated July first by your banker, and authorize our changing agreement to eliminate motor as stated in our last letter, we will forward bill of sale on receipt of your voucher." Following this, respondent heard nothing more from Pettit, but Pettit completed the resale of the press to appellants. He retained all the purchase price paid by appellants and failed to pay to respondent the amount he had promised to pay for the purchase of the press. At the trial his whereabouts was unknown. The evidence also disclosed that respondent, as well as appellants, knew that Pettit was in the business of buying and selling used machines.

Appellants contend that they obtained a good title by their purchase from Pettit under several rules, including the rule laid down in Civil Code, section 1142, which reads:

"Where the possession of personal property, together with a power to dispose thereof, is transferred by its owner to another person, an executed sale by the latter, while in possession, to a buyer in good faith and in the ordinary course of business, for value, transfers to such buyer the title of the former owner, though he may be entitled to rescind, and does rescind the transfer made by him."

The principle embodied in this section is well established (Estrich on Installment Sales, sec. 151), and has been the guiding rule in many decisions in this state. In applying this principle these decisions have often treated the facts as an equitable estoppel. Sometimes they seem to be based chiefly on Civil Code, section 3543, which provides: "Where

one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer.'' In some cases they are based solely on the principle of law stated in Civil Code, section 1142, meaning that title actually not fictitiously passed by reason of this principle. Among this last-named group of decisions are *Carter* v. *Rowley*, 59 Cal. App. 486 [211 Pac. 267]; *Commercial Acceptance Trust* v. *Bailey*, 87 Cal. App. 117 [261 Pac. 743]; *Wright* v. *Solomon*, 19 Cal. 64 [79 Am. Dec. 196] (1861).

Respondent's answer to this contention is that appellants did not plead estoppel in their answer as a defense and that the case was not tried as though this point were an issue. Most of the time at the trial was devoted to identifying the press and to ascertaining the exact transaction between the respondent and Pettit as if to determine whether title had passed between these two. Appellants' counsel, however, did bring out evidence of all the elements essential to the operation of Civil Code, section 1142. Some, but not the greater part of the evidence, came in over the objection that it was immaterial, but at no time was any objection made that expressly directed attention to the necessity of pleading such facts as an estoppel. The record does not show that appellants' counsel at the trial claimed an estoppel by name, but it does show that he put forward the claim of title by reason of the provisions of Civil Code, section 1142.

It is held in this state that an equitable estoppel as a defense must be pleaded, but there seems to be no good reason why this rule of decision should be applied to Civil Code, section 1142. While the rule of that section may be said to be based fundamentally on the principles of equitable estoppel, its language does not say that the owner of the property shall be estopped under the named conditions from asserting his title against the innocent buyer, but it says that the owner's title itself is transferred to such buyer under the named conditions. This section is found in an article of the code named ''What operates as a transfer,'' and in a chapter named ''Transfer of personal property.'' This being one method of transferring title prescribed in the code, a simple denial of plaintiff's title and right of possession should permit proof to be given of the acquisition of title by this method as well as by the

method of acquiring property by a direct transfer from the original owner. Furthermore, the operation of the rule of that section may as well be called a sale by agent as a sale by estoppel. (See *Carter* v. *Rowley, supra,* at page 491.)

■ The original owner's authority to sell, mentioned in Civil Code, section 1142, may be implied as well as expressed. (*Carter* v. *Rowley, supra,* at page 489; *State Finance Co.* v. *Isaacson,* 86 Cal. App. 113 [260 Pac. 580]; *Wright* v. *Solomon,* 19 Cal. 64 [79 Am. Dec. 196]; *Spooner* v. *Cummings,* 151 Mass. 313 [23 N. E. 840]; *Gump Investment Co.* v. *Jackson,* 142 Va. 190 [47 A. L. R. 82, at p. 94, 128 S. E. 506]; Estrich on Installment Sales, sec. 151.) "The consent of the owner to a disposition of his property may be inferred from acts, as well as given in direct terms. It may be inferred when the owner gives such evidence of the authority of disposal as usually accompanies such authority according to the custom of trade and the general understanding of business men. Thus, the delivery of goods to a merchant, engaged in the sale of articles of a similar kind, is such evidence of the bestowal of the right to dispose of the same as to protect the purchaser from the possessor. The possession under such circumstances is evidence, not that the possessor is owner, but that he has received authority from the owner to sell." (*Wright* v. *Solomon,* 19 Cal. 64, at 76 [79 Am. Dec. 196].) ■ Respondent knew that Pettit was in the business of selling presses, knew that he intended to offer for sale this press, both from knowing the nature of his business and from the exchange of telegrams. Respondent, must, therefore, be held to have authorized a resale by Pettit. Whatever may be said about whether respondent transferred the title of the press to Pettit, it undoubtedly transferred the possession which is the thing mentioned in Civil Code, section 1142.

It follows, therefore, that the judgment appealed from should be reversed. A new trial is ordered.

Sturtevant, J., and Nourse, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on December 5, 1928.